# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAROL VAUGHN,                    )
                                 )
       Plaintiff,           )    Civil Action No. 10-155 Erie
                                 )
    v.                         )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
       Defendant.           )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

## I.    INTRODUCTION

Carol Vaughn ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed her applications on October 19, 2006, alleging disability since September 4, 2006 due to "hand problems and numbness in body" (AR 113-117; 141).[1] Her applications were denied and she requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 69-79). Following a hearing held on April 15, 2008 (AR 31-64), the ALJ concluded, in a written decision dated June 3, 2008, that the Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 11-22). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed her complaint in this Court on June 24, 2010 challenging the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, the

---

[1] References to the administrative record [ECF No. 5], will be designated by the citation "(AR ___)".

1

Commissioner's motion will be denied and the Plaintiff's motion will be granted only to the extent she seeks a remand for further consideration.

## II. BACKGROUND

Plaintiff was 54 years old on the date of the ALJ's decision and has a high school education (AR 20). Plaintiff has past relevant work experience as a bus driver and stopped working on September 1, 2006 (AR 141). Plaintiff stated that that hand problems and body numbness limited her ability to work (AR 141). Plaintiff claimed that severe hand pain made it hard for her to "do anything" and that she could not "feel [her] feet" (AR 141).

The relevant medical records reveal that the Plaintiff has been evaluated and treated by a number of health care providers, including several neurologists, rheumatologists and neuromuscular specialists for her complaints of pain (AR 176-229; 237-317).[2] On September 22, 2006, the Plaintiff was seen by Lawrence Adams, M.D. and complained of pain and a burning sensation in her hands and pain in her left knee (AR 212). An MRI of the Plaintiff's brain dated October 6, 2006 showed no acute ischemic event, but changes in the white matter tract were moderately suspicious for a demyelinating disease (AR 206).

Plaintiff was evaluated on October 18, 2006 by Alan Kivitz, M.D., a rheumatologist, for her complaints of hand and foot pain/numbness (AR 181-183). Her physical examination was unremarkable and lab studies were ordered (AR 183). On November 9, 2006, Dr. Kivitz's physical examination of the Plaintiff remained unchanged and he was of the opinion that her complaints were probably not the result of a "true rheumatologic process" (AR 178).

On November 13, 2006, the Plaintiff was evaluated by Kathleen Schaefer, M.D., a neurologist (AR 189-191). Dr. Schaefer noted that the Plaintiff's MRI showed no acute abnormalities, but that she had some chronic changes which were likely ischemic, given her history of severe hyperlipidemia and cigarette smoking, but noted these abnormalities were not atypical in a patient with a demyelinating disease (AR 190). Her physical examination of the Plaintiff revealed no deficits, except some decreased sensation was noted below the Plaintiff's

---

[2] Plaintiff has also been diagnosed with hypothyroidism for which she takes medication (AR 253; 258; 263).

left wrist, below the right mid-palm and the dorsum of the hand, and her sensation was "somewhat" decreased in her calves bilaterally (AR 190). Dr. Schaefer diagnosed the Plaintiff with paresthesia, numbness and joint swelling (AR 190). On November 28, 2006, Dr. Schaefer reported that nerve conduction studies revealed mild bilateral sensory median neuropathy consistent with mild carpal tunnel syndrome (AR 189).

Plaintiff was seen by Robert Gotoff, M.D., an infectious disease specialist on December 6, 2006, who reported that an examination of her extremities revealed no joint deformities, effusion or inflammation, and her neurological examination revealed no abnormalities and no focal motor deficits (AR 198). Dr. Gotoff assessed her with an abnormal MRI of the brain consistent with a demyelinating disease and considered either MS and Lyme disease as a possible diagnosis (AR 198). A subsequent CT scan of the Plaintiff's head dated December 16, 2006 revealed minimal cortical cerebral atrophy and right ethmoid sinusitis, but no evidence of intracranial hemorrhage or mass effect (AR 215; 221).

On March 1, 2007, Juan B. Mari-Mayans, M.D., a non-examining state agency reviewing physician, reviewed the medical evidence of record and opined that the Plaintiff could perform light work involving only occasional climbing, balancing, stooping, kneeling, crouching and crawling (AR 230-234). [3]

Plaintiff was seen by Dr. Schaefer in January 2007, and continued to complain of diffuse pain in her limbs, joints and back, as well as headaches (AR 238). Dr. Schaefer noted she was on a "variety of narcotics" for her pain and that a lumbar puncture performed that month was

---

[3] Light work is defined in the regulations as follows:

> Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

3

unremarkable (AR 238). Plaintiff's neurological examination showed mild to moderate spinal tenderness without any deformity (AR 238). Her strength was symmetric, she had reduced sensation of the index and middle fingers bilaterally, mildly diffuse brisk reflexes and no pathologic reflexes (AR 238). Dr. Schaefer felt the Plaintiff's symptoms were suggestive of a systems disorder (AR 238).

Plaintiff was evaluated by Milind Kothari, D.O., at a neuromuscular clinic in February 2007 (AR 290-293). Physical examination was unremarkable except for some mildly diminished pin prick sensation in the finger tips and of the ankles, left greater than right (AR 291-292). An MRI conducted on March 27, 2007 showed scattered periventricular changes but no change from her previous MRI (AR 294; 298-299).

Plaintiff was evaluated by Larry Moreland, M.D., a rheumatologist on September 12, 2007 (AR 262-264). Her physical examination was unremarkable except for some "positive trigger points" in her back and shoulder area, and she was diagnosed with an undefined connective tissue disease based on her neurological history (AR 263-264).

Plaintiff returned to Dr. Moreland on September 19, 2007 who reported that all of her laboratory studies and radiographic studies were normal except for some minor changes of osteoarthritis in her hands (AR 258). Plaintiff reported that she was still suffering from severe pain and her medications were not effective (AR 258). Her physical examination remained unchanged (AR 258). Plaintiff was diagnosed with fibromyalgia syndrome and osteoarthritis (AR 258). Her Vicodin dosage was increased and she was referred for pain management (AR 258). A November 14, 2007 musculoskeletal examination performed by Dr. Moreland revealed osteoarthritic changes of her DIP and PIP joints but no other abnormalities were noted (AR 254). She had a good range of motion of all joints and exhibited normal strength (AR 254).

Plaintiff was seen by Renu Pokharna, M.D. on November 29, 2007 who noted that all of her studies had been negative (AR 301). Her physical examination remained unchanged (AR 302). Dr. Pokharna ruled out multiple sclerosis and concluded that fibromyalgia was the likely cause of the Plaintiff's pain (AR 302).

On February 25, 2008, the Plaintiff was evaluated by Zhenhui Li, M.D., a neurologist (AR 314-317). Plaintiff's physical examination revealed tenderness in her limbs, back and chest wall, but her remaining examination was normal (AR 315-316). Dr. Li diagnosed the Plaintiff with fibromyalgia and prescribed medication (AR 316).

Plaintiff and Joseph Bentivegna, a vocational expert, testified at the hearing held by the ALJ on April 15, 2008 (AR 31-64). Plaintiff testified that she experienced pain over her entire body (AR 42). She claimed that her hand pain was excruciating and caused her to cry (AR 44). She was unable to use her hands on a repetitive basis and had difficulty with her grip (AR 45). Plaintiff further testified that she suffered from pain in her feet with "extreme" burning in her ankles and "extreme" back pain resulting in sleep disturbances (AR 43; 46). She took pain medication without much success which caused side effects (47-48). Plaintiff also took medication for symptoms of depression, which affected her ability to focus (AR 50). Plaintiff testified that although she cared for her disabled husband, she did not perform any household tasks (AR 52-53).

The vocational expert was asked to assume an individual of the same age, education and work experience as the Plaintiff, who was able to perform light work with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, and was limited to performing no more than simple, repetitive, routine tasks with no more than occasional public or co-worker interaction (AR 56). The vocational expert testified that such an individual could perform the light positions of a paper sorter, folding machine operator, collator and wood inspector (AR 56-57).

Following the hearing, the ALJ issued a written decision which found that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Act (AR 11-22). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or

5

considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

### IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through September 30, 2008 (AR 13). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that the Plaintiff had the following severe impairments: hypothyroidism, a neurological disorder with paresthesia and fibromyalgia, but determined at step three that she did not meet a listing (AR 13-14). The ALJ found that she was able to perform light work, except she was limited to no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, and was limited to simple, routine and repetitive tasks due to chronic pain, numbness and medication side effects (AR 14).

At the final step, the ALJ concluded that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 19-20). The ALJ concluded that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible (AR 16). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff's sole argument in support of her motion is that the ALJ erred in mechanically applying the age categories set forth in the Commissioner's regulations without considering whether a "borderline age" situation existed. *See* Plaintiff's Brief pp. 6-8 [ECF No. 8].

The Commissioner's regulations provide that a claimant's chronological age is considered "in combination with [her] residual functional capacity, education, and work experience" in determining whether she is disabled and, therefore, eligible for benefits. 20 C.F.R. §§ 404.1563(a), 416.963(a). The Commissioner utilizes the following age categories: (1) a younger person (under age 50); (2) a person closely approaching advanced age (age 50 to 54); and (3) a person of advanced age (age 55 or older). 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e). The Commissioner's regulations provide, however, that the age categories will not be applied mechanically in a borderline situation, rather:

> … If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use that older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b0, 416.963(b).

The Third Circuit has held that if a borderline analysis could potentially change the ALJ's determination of disability, a remand is necessary for further consideration. *Kane v. Heckler*, 776 F.2d 1130, 1134 (3rd Cir. 1985). As this Court recently stated in *Morealli v. Astrue*, 2010 WL 654396 at * 8-9 (W.D.Pa. 2010), "[d]istrict courts within the Third Circuit have recognized that there is no 'brightline rule' for what constitutes a 'borderline situation.'" (citing *Davis v. Astrue*, 2009 WL 3241853 at *7 (W.D.Pa. 2009). As stated in *Istik v. Astrue*, 2009 WL 382503 (W.D.Pa. 2009):

> Numerous courts in the Third Circuit, including our appellate court, have found borderline situations when the plaintiff is only a couple of months away from the next age category. *See Lucas v. Barnhart*, 184 Fed.Appx. 204 (3d Cir. 2006) (holding that 106 days is borderline); *Kane*, 776 F.2d at 1134 (finding 48 days clearly creates a borderline situation); *Ludivico*, 2008 WL 5134938 at *11 (finding five months constitutes a borderline situation); *Bennett*, 1990 WL 122912 at *5 (holding ten months was borderline); *Williams v. Bowen*, 1987 9148, *2 (E.D.Pa. April 6, 1987) (seven months considered borderline).

> Moreover, this line of reasoning is not limited to decisions rendered within our Circuit. *See Cox v. Apfel*, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) ("because plaintiff was within six months of the age category … at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids."); *Fosha v. Barnhart*, 372 F.Supp.2d 948, 955 (S.D.Tex. 2005) (ALJ must considered [sic] a borderline situation when Plaintiff is seven months away from the next age category); *Smith v. Barnhart*, 2002 WL 126107, at *24 (N.D.Ill. Jan. 31, 2002) (finding six months is a borderline situation); *Tousignant v. Apfel*, 1998 WL 142415, at *5 (N.D.Ill. Mar. 26, 1998) (ten months is borderline); *Howard v. Bowen*, 638 F.Supp. 68, 72 n. 4 (D.D.C. 1986) (eight months is borderline).

*Istik*, 2009 WL 382503 at *9.

In *Morealli,* the claimant was 5 and 1/2 months shy of her fiftieth birthday. I remanded the case for consideration of the Plaintiff's borderline age status stating:

> The outer limits of what constitutes a "borderline age situation" remains unsettled and it is unnecessary in this case to opine what that age might be. Here, however, given the case law summarized above, it is my view that the ALJ should have given consideration to the Plaintiff's borderline age status. For instance, the ALJ did not make a finding as to transferability of skills, holding that '[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills. …" (AR 23). The ALJ cited to Rule 201.21, which provides that a "younger individual" who is a high school graduate with a history of skilled or semi-skilled work that is not transferable is considered "not disabled." *See* 20 C.F.R. Pt. 404 Sub.Pt. P, Appx. 2 Table No. 1, § 202.21. When utilizing the "closely approaching advanced age" category however, if the Plaintiff's job skills were found to be not transferable, Rule 201.14 would direct a finding of "disabled." *See* 20 C.F.R. Pt. 404 Sub.Pt. P, Appx. 2 Table No. 1, § 202.14. This matter shall therefore be remanded to the Commissioner for further consideration.

*Morealli*, 2010 WL 645396 at *9.

Here, at the time of the administrative hearing, the Plaintiff was 54 years old, a person "closely approaching advanced age," and was approximately four months and 18 days from turning 55 years old. At the time of the ALJ's decision, the Plaintiff was only three (3) months shy from turning 55 years old. I reject the Commissioner's argument that the Plaintiff's age was

9

not sufficiently close to 55 so as to render a borderline age analysis appropriate. I find that the ALJ erred in failing to conduct a borderline age analysis.

That said, it will be incumbent upon the ALJ to determine, in the first instance, whether the Plaintiff has additional vocational adversities which would support the use of the higher age category.

## V. CONCLUSION

For the reasons discussed above, the Defendant's Motion will be denied and the Plaintiff's Motion will be granted only to the extent she seeks a remand for further consideration. The matter will be remanded to the Commissioner for further proceedings.[4] An appropriate Order follows.

---

[4] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3rd Cir. 2010).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-155 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 28th day of April, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [ECF No. 9] is DENIED, and the Plaintiff's Motion for Summary Judgment [ECF No. 7] is GRANTED only to the extent she seeks a remand for further consideration by the Commissioner. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                               s/ Sean J. McLaughlin
                                                 United States District Judge

cm:    All parties of record